Thank you. May it please the court, my name is Jeffrey Wax. And my partner, Laurie Speake, and I are certified law students under the supervision of Peter Alfraseabi and Catherine Davis. And we represent petitioner Guillermo Ernesto Guevara-Calderon in his appeal before this court. After I address the government's failure to establish Mr. Guevara-Calderon's removability, Ms. Speake will discuss the IJ's error in denying him asylum and withholding relief. And we would like to reserve two minutes for her. OK. The government has failed on three grounds to meet its burden of establishing the removability of my longtime lawful permanent resident client by clear, convincing, and unequivocal evidence under section 237A2B1 of the INA. First, the government relies upon a 24-page printout that fails to meet the standards for judicial cognizability outlined in Snellenberger for consideration under the modified categorical approach. Under Snellenberger, a judicially cognizable document must be prepared by a court official, be taken, be prepared at the time the guilty plea is taken. You're talking about the Snellenberger en banc now, right? Yes, correct, Your Honor. What about Strickland? Yes, Strickland and Snellenberger address somewhat different issues, Judge Kleinfeld. Specifically, here's my concern. It looks like we have a docket sheet and a certified copy of the complaint. And the docket sheet says, pleaded guilty to the complaint. It looks like those can both be considered under Snellenberger and Strickland. And it looks like what he pleaded to was unlawful possession of a controlled substance, and then the important part, too wet cocaine or base. I'm not clear on how your argument gets around that. Respectfully, Judge Kleinfeld, the government has not established the specific nature of the substance which my client pled. All we have is that he pled, in that document, he pled to a violation of California Health and Safety Code 11350A, which, as this court will recognize, regulates more substances than are on the federal schedule. Now, if this court were to accept the document under Snellenberger, and again, in their language in the complaint that he pled to cocaine base, in that language from the complaint. Respectfully, Judge Martley, he did not plead to that specific language. There's no, the record of conviction, this 24-page document that we can test the admissibility of, it doesn't specifically say, it doesn't enumerate the nature of the substance at issue. All it says is that he pled to count one possession of a controlled substance under 11350A. Why don't we then just look to count one, and it says right here, to wit, cocaine base. And that would be fine, Your Honor, except for the fact that under this court's precedent, where the record of convict, where the record consists entirely of a felony complaint or a complaint and a record of conviction, there must be a critical linking language that this document omits. You mean, you're talking about Vidal as charged. I'm talking about, yes, Your Honor, I'm talking about as charged. But there's also other cases. Here's what concerns me about this body of law. It's that we, does anyone really question whether this appellant was convicted of possession of cocaine base? Didn't he plead to that? Didn't he? Well, Your Honor, the point is that under the modified categorical approach and under Takata, I understand that. We can't draw inferences. Mr. Wax, I really do understand that. I just want to know, did he plead to it? We don't know. We can only surmise that. There's nobody who knows what this guy plead to? The record does not meet the standards of clear, unequivocal, and convincing evidence. We have to draw an inference between these two documents. And those inferences have been rejected by this court. These cases keep me up at night, Mr. Wax, because we exhort form over substance. It just seems that we, that there, as Judge Kleinfeld pointed out, there's language in the complaint that he pleaded to possession of cocaine base. And it seems like it's the 900-pound elephant in the room that everybody knows he did, but nobody wants to say it. Or maybe the government didn't say it the right way. But that's what happened. And I agree that there are formal distinctions in the law. However, here we have the liberty in this of a long-term. I still don't see it. I'm looking at Strickland, and I don't see how you get around it. Show me the words in Strickland. You must have it right in front of you, too. I'm sorry, it's actually, the language comes from Vidal, where the record consists entirely of a complaint and a record of conviction. The conviction must include the linking language as charged in the information. Oh, that's a different issue. Vidal is 2007, and Strickland is an en banc from 2010. That's why I was looking at Strickland. I understand. But even in Strickland, there, the docket at issue in Strickland, the Maryland State Court docket, it contained more information. Well, if you look at the docket sheet, the docket sheet was never amended, right? I'm sorry? Well, one of the concerns in Vidal, I believe it was, was that the judge said that, you know, at some point, maybe the complaint was amended. So we don't really know what they were, what the defendant might have been pleading to. But here, the complaint says cocaine-based. The charging document identifies cocaine-based as a controlled substance. And the docket sheet doesn't indicate that the charge was ever amended. So can't we infer that the appellant pleaded to cocaine-based? Well, two things, Your Honor. First of all, we know that there was some sort of negotiation, some sort of colloquy at play here, because there were two charges originally brought again to my client, and he only pled to one of them. We don't have a transcript or any sort of record of that colloquy. So we don't know the specific facts of what was pled. What I have, Mr. Wax, is this. If I understand the record correctly, there was a deal. And then they changed their mind. He changed his mind. He withdrew the plea. They restored the probation. Then he changed his mind again. And on page, if I'm looking, at least debate stamp 329, it then says, the court orders probation and Proposition 16 summarily revoked, bench warrant issued in the amount of no bail, count one disposition convicted. Now, in that case, count one can only be one thing. It's count one of the complaint. And count one of the complaint talks about the cocaine base, right? Count one of the complaint does refer to cocaine base. However, count one on the record of conviction makes no reference to the specific charge. So it's an internal reference. Well, but with respect, that's why I say, originally, I agree with you if you look at that part. But if you look at this ongoing saga in this thing, he revoked his plea. Then he came back. And that time, it does make reference to count one. And it says he was convicted. It says, again, it's a recursive loop. The document only refers to count one within the conviction document, not the charges. And I agree that these are very few. I still don't understand. There are two problems that I'm having. One is, you want us to rely on a 2007 en banc. And I'm looking at the 2010 en banc. The dissenter in the 2007 en banc wrote the majority opinion in the 2010 en banc. It looks like the court turned around there. And the second thing that concerns me is that in Vidal, the 2007 en banc, the court did not say, as charged in the information, is magic words that have to be there, like Blackacre to A and his heirs. It just says that it has to be there in a case such as that, because you can't tell from the indictment and the judgment whether the person was convicted of an aggravated felony or not. But here, you can because of the words, too wit, cocaine base. The California law is broader than the aggravated felony. So you need something to help you tell exactly what the person was convicted of. And here you have it. We have it in a separate document that doesn't reflect the plea. And unfortunately, I'm running out of time. Of course it doesn't. The separate document's a complaint. The plea refers to the separate document, rather than the separate document, the complaint, referring to the plea. And all I can say is that this court has insisted in times past, including cases like Avila and more recently in Garcia Tellez, both of these are unpublished cases, but they do reflect the court's jurisprudence and the court's insistence upon a direct link that leaves no room for inference under the modified categorical approach. And I'd like to yield the rest of my time. And we're going to give your colleague a little more time. You're doing a fine job. So let's hear from your colleague here. I'm sure the government doesn't mind a little bit of this here. Good morning. Good morning. The BIA erred in denying all forms of relief to Mr. Guevara Calderon because substantive evidence compels the conclusion that he's eligible for asylum, withholding of removal, and relief under CAT. I'd like to just very briefly address three key issues this morning. First, substantial evidence compels the conclusion that Guevara Calderon suffered past persecution. This Court was beating up the one time with his brother. But that was just the one time. And he's since returned to his and that was over 30 years ago, right? And he has since returned home. And when he returned home, nothing happened to him. Is that right? Yes, two points on that. So first, that there is one incident of the beating. And this Court has articulated that one incident is sufficient to compel a finding of past persecution. Provided that it occurred because of a protected category. And I think the allegation here is that it was because of his political opinion. There's no evidence of that at all, is there? There is evidence of his political opinion. He testified specifically that his friend, Kulipa, was tortured. And upon being tortured, he revealed the location of Guevara Calderon's home and the political activities that occurred there. How old was your client at that point? How old was he? How old was he? I believe he was in his late teens. And hadn't he attacked an airport or something like that? There are, yes. In the record, it said that he was involved in an attack on the Air Force base. And isn't there also some evidence in the record that he was, that they were at the wrong house when they administered the beating to him and to his brother? Your Honor, the evidence doesn't support that interpretation. Rather, the evidence suggests that it was because one of the heads of the military group recognized the brother, who was a disabled individual, and had sympathy on him, and so wanted to stop. It doesn't appear that this was a misunderstanding of whose home it was. The way I remember it, they beat him up because he'd been part of a group that attacked the base, the military base. That's the conclusion that the IJ came to, Your Honor. But there's no actual evidence that this particular group of soldiers. It's an administrative law case. All he needs is substantial evidence on the record as a whole. We don't even look at it for probability, let alone clear error. There is no evidence that these particular soldiers, at the time of the beating, had any knowledge of the attack on the Air Force base. Can't that just be assumed? But is there any evidence that they had any knowledge of your client's political views? The torture of his friend, Gulipa, and the revelation that the political activities were occurring in his particular home, in Guevara Calderon's home, and that these activities were political. In addition, during the attack. I'm not certain that that was Judge Smith's question. My question, and I'm piggybacking on Judge Smith's, what evidence is there that the soldiers knew of the appellant's political views, which then prompted them to go to his home and beat him? Your Honor, Guevara had, the IJ and the BIA never questioned Guevara Calderon's credibility. And he testified that the military was aware of his political involvement, that they pursued him, and that based on the testimony of Gulipa, this friend, they found out the location of his home and understood the political activities that were occurring there. That's the evidence that's in the record. Let's assume that we were to accept all your arguments. Why would they not still be, without force, considering our standard of review because of the several decades that have elapsed since that incident? Based on the past persecutions, if this court finds past persecution based on account of political opinion. We've got several. Well, that's a big if right there. But even so, it's rebuttable. Why wouldn't it be rebutted by the fact that he went back safely, as Judge Marbley pointed out, not all that long later? The country report says the Civil War is over, and there are no death squads. There doesn't seem to be any continuing threat, and there's no evidence of any continuing threat. And ordinarily, after 30 years, you would expect whatever problem there was to go away. Why isn't that enough under our standard of review? As to the length of time, this court has recognized that short return trips don't necessarily undermine a well-founded fear of first-timers. Your correction to your remark when you said first don't and then don't necessarily is very important. Yes, but so in Karina's, the individual returned home for a month and for two months and had no harmful interactions there. And this court found that that wasn't sufficient to rebut the presumption of well-founded fear. Here, Guevara Calderon returned for a few weeks. He rarely left his hotel. He had gone back to get papers for his immigration to the United States. They didn't know he was there. However, if he's returned and if he's removed to El Salvador, the government will clearly be aware that he has returned to the country. Where in the record can you point me to credible, direct, and specific evidence of well-founded fear of future persecution, especially given the fact that his only attack was 30 years ago. He's been back. He wasn't attacked. And if the government was as all encompassing as you contend, they would have known that he was there for a couple of weeks and could have done something. So where is the objective evidence of future persecution? Guevara Calderon has testified that he's specifically afraid of returning to the country. That's his subjective fear. Correct, based on the fact that both political parties who the political parties in power and the guerrillas both hold roles in the government. The country report is unable to rebut that presumption because it doesn't specifically address those issues and still notes that there are humanitarian violations, police and government abuse, including killings of individuals. And the government has the obligation to rebut that presumption. And the only document submitted is the country report. And because it cannot specifically address the fears that Guevara Calderon has articulated, it fails to be able to rebut that presumption. Ms. Speaks, we've given you a lot of extra time because we want you to have a full opportunity to participate. And you've done an excellent job, both you and Mr. Wax. I think we better let the government have an opportunity to speak here. Thank you very much, Your Honor. Good morning, ma'am. Please support Kelly Walls for the Attorney General. The record evidence, including the felony complaint and docket sheet, clearly and convincingly established that Mr. Guevara Calderon was convicted of possession of cocaine base, rendering him immovable as charged. And does this bear on removability or eligibility for relief or both? Removability only in this case. The IJ did not sustain the aggravated felony charge. The felony complaint is labeled as case number BA-235446. The docket sheet in this case matches to that case number. So therefore, we know the complaint relates to the docket sheet. Count one of the felony complaints specifically lists the controlled substance at issue as cocaine base. Cocaine base is a Schedule II substance under the Controlled Substances Act. How do you address Vidal? Vidal dealt with a complaint and a record of judgment. So essentially, it had the beginning and the end of the case. We didn't know what happened in the middle. So there could have been an amendment to the complaint, meaning that the judgment was not necessarily for the charge as made in the complaint. I can't remember for sure right now. Sometimes the judgment says person is guilty of violation of statute ABCDE and is sentenced to X. And that's all it says. And sometimes the judgment says more. Was this a judgment of the first type so that all you could tell that he was convicted of was a violation of the statute? In Vidal? Yes. Yes, I believe it just said that. And the statute included it. So it wasn't necessarily. There was nothing like the docket sheet that says to the complaint. And that was my point, is that because we have the entire docket, we know what started from the indictment all the way through the conviction and actually some plea negotiations that amended the first charge is that we know there's no amendment. My question's a little different. We know he pleaded to the complaint from the docket sheet if the docket sheet is cognizable. Yes. And the complaint says do with cocaine base. Yes. And what I'm wondering is, is there any equivalent to that in Vidal? I'm not sure I understand the question. In Vidal, the problem was is I believe that there was an amendment. And that because what he actually pled to was not necessarily what was charged, you couldn't say that. I think the point in Vidal was that you couldn't tell exactly what happened because sometimes amendments are oral. Yes. But the problem in Vidal was that we just had the beginning and the end, essentially, those documents. Here we have an entire record of the case and we know there was no amendment. We know there's only ever been one count one. And that count one was as initially charged in the felony complaint. And that felony complaint specifically says to wit cocaine base, which was a Schedule II controlled substance. Therefore, rendering Mr. Guevara Calderon removable is charged. If there are no other questions on the conviction, I'll go ahead and move to the asylum case. To succeed in an asylum application, an applicant must show at least two things. The part of your case that strikes me as the most troublesome on the asylum is that the beating was for attacking the Air Force base and not for political opinion. It strikes me that that is the most debatable issue because if a bunch of kids attack your Air Force base, the natural question to ask is, why did that bunch of kids attack our Air Force base? And a logical response, if there are hot politics going on, is they got something against the military. Well, it could have been that they were teenagers who were looking for trouble. I mean, there's lots of reasons that it could be. Could have been. Could have been. But say it's the Vietnam War. Well, you probably don't remember that. If a bunch of kids attacked the military base during the late 60s, probably they had a beef with the Vietnam War. Well, in this case, we know that Mr. Guevara Calderon's father was killed in a car accident with an Army vehicle. So he could have been seeking retaliation against the government for that, which would not be political. There are other explanations. But let's look at what the record says. It could be that he hates the color green. But my question is, that's the most debatable part. How does your argument go if you lose on that point? Well, he asked it, as I was saying, he asked to establish two things, both that it was on account of a protected ground and that it rose to the level of persecution. Here we have the one incident of the beating. And while it was severe, the record does not compel the conclusion that this was persecution. This is a case that rises and falls on this court's standard of review, substantial evidence. Whose burden is it to show, number one, that it was a covered activity, in this case, political opinion? And then also, whether it constituted persecution? As with all applications for relief, it's Mr. Guevara Calderon's burden to show this. He has the burden to show this. If there is a close call, the government wins. Is that correct? That's exactly correct. And in cases where the court has to- But what if there are inferences that can be drawn from it? I happen to agree with Judge Kleinfeld. It doesn't make sense that he's just out, and he and some of his buddies said, well, let's go throw rocks at some planes. The likelihood is that there was a relationship. And Ms. Speaks was correct. There's evidence in the record which shows that the military beat him and that one of the officers felt some sympathy for the disabled brother and acted like they were at the wrong house to persuade the other soldiers to leave. So if you cobble the two of those together, you have a somewhat convincing case that at least 30 years ago, he was beaten because of his political views. OK, and that's where I was getting to. The beating itself still has to rise to the level of persecution, and this court would have to find that the record compels that conclusion. He was beaten pretty severely, by your own admission. Is there a line? Well, I would say it's one of those cases where this is probably a close case and reasonable fact-finders can differ. That doesn't meet the compels reversal standard. If you look at the cases where the court has reversed the immigration judge's finding of no past persecution, for example, in Guo, there was no- How about Navis? That case, I think, actually differs because there was family involvement that actually played quite a specific role. There was an aunt and uncle that were both murdered, and they were actually more- OK, so we have a brother who was also beaten. I would say beating and being two family members being murdered are substantially different, much like the other cases where we don't have murder at issue. So you have to die first before you get a state of flight? No, no, no, this is what I was trying to address. In Guo, we had two detentions, one for 15 days where he was struck with an electric baton, hit in the face seven to eight times, tied to a chair and beaten with a plastic pole, and then fired from his job. Look, any beating can be described more or less amply. I think this fellow was beaten unconscious. And the question is, does our case law establish that one beating to unconsciousness for political opinion is persecution or not? Again, I would go back and say, I'm not sure that this record compels the conclusion that it was on account of a political opinion. I know that, but hypothetically, assume that we conclude that there was not substantial evidence to conclude to the contrary and that the evidence compelled the conclusion that he was beaten to unconsciousness for his political opinion, what does our case law establish with regard to whether that amounts to persecution? He walked away from this beating with a dislocated shoulder and was he beaten to unconsciousness or not? Yes, and he was revived during the course of the case. Do you wish to respond to my question, or do you want to waive your opportunity to cite a case? No, I think that every case differs, and it's so fast. Do you wish to respond to my question and offer me a case? I do know that they have cited two cases that do deal with beating someone to unconsciousness, and that is a severe beating. But this is such a fact-specific analysis that the court has to do, and it is governed by the substantial evidence standard. Let's assume for a moment that he's established past persecution. Then he has a presumption in the future. But whose burden is it, then, to show that that presumption is not likely? Is that the government? It is the government. And what, in this case, do you show that it is unlikely, even if, even arguendo, if we say that there was past persecution? Actually, in this case, because there was a finding of no past persecution, they did not reach that issue. So it would have to go back to the agency under Ventura and Thomas for a finding on that ground. I'll treat you as conceding that under our authority, beating to unconsciousness is, for political opinion, is persecution, since I offered you two opportunities to cite a case to the contrary, and you did not. I am not conceding that. What I'm saying is you do have case law that suggests that. I am simply saying that it is a very fact-specific analysis that is required, and that one could become unconsciousness for various reasons. Okay. Point to the specific fact that distinguishes this case from those. That he was revived. He went to the hospital. He had no head injuries of any kind. I think that you could become unconscious during the course of a beating for numerous reasons that are not severe. His injuries were broken ribs and a dislocated shoulder. Those in themselves are severe, but I don't think the unconscious the fact that he became unconscious necessarily indicates the severity of it. The record just simply does not compel this one incident was persecution by the El Salvadorian government. Very good. Any other questions for my colleague? We thank both parties for arguing. I don't think we need to have a rebuttal now. You all have ably advocated your case. We want to especially thank the law students from University of California Irvine Law School and their pro bono sponsors there. We appreciate it. And as we indicated to your colleagues, I guess it was yesterday, in these cases, somebody wins, somebody loses. But we want you to know, and I don't know which one's going to be at this point. But we want you to know that participating in a process that gives due process to your client is very, very important. And we hope that you feel, by having participated today, that you were an important part of that process. You have independent, life-tenured judges who are hearing the case. We have nothing to gain one way or another in terms of our own personal well-being. And however the case is decided, we will decide the case in accordance with our understanding of the law and the facts. And you have each played an important role, as has the government, in advocating your position. So we thank you all. And we will now submit the case of Rivera-Calderon versus Holder. Thank you. We'll next hear argument in the case of United States versus Honorabe Verduzco. Wait a second, Mr. Gunn. I think you've got a colleague lining up here. I don't think they want to take notes on anything I'm saying. Your Honor, it's Carl Gunn, appearing for Mr. Honorabe Verduzco.
judges: Marbley, Kleinfeld, Smith